# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**DENNIS LEE MCGOUGAN, SR.**       *

      *

      **v.**       *     **Civil Case No. JKB-13-52**

      *

**COMMISSIONER, SOCIAL SECURITY**     *

      *

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 14, 18. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Mr. McGougan's motion be denied.

Mr. McGougan applied for Supplemental Security Income and Disability Insurance Benefits on October 7, 2009, alleging a disability onset date of June 14, 2009.[1] (Tr. 155-61). His claims were denied initially on January 25, 2010, and on reconsideration on September 13, 2010. (Tr. 76-80, 83-86). An Administrative Law Judge ("ALJ") held a hearing on December

---

[1] Mr. McGougan alleges that he later amended the onset date to March, 2010, and suggests that the ALJ erred by considering the earlier onset date and not the amended onset date. Pl. Mot. 2. The Commissioner contends that the date was not properly amended. Def. Mot. 19. Even assuming that the ALJ failed to note a proper amendment of the onset date, the error would be harmless because the ALJ's opinion considers the time frame from June 14, 2009, through the date of the opinion on January 6, 2012. (Tr. 12-20). Clearly, then, the narrower period from March, 2010 through the date of the opinion was also considered. Moreover, there would be no error in reviewing the period from June 14, 2009 through March, 2010, because an ALJ is required to develop a claimant's medical history dating back at least one year preceding the date an application is filed. *See* 20 C.F.R. 404.1512(d).

19, 2011, (Tr. 26-71), and subsequently denied benefits to Mr. McGougan in a written opinion, (Tr. 9-24). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. McGougan suffered from the severe impairments of hypertension; cardiomegaly; hyperlipidemia; substance abuse; alcohol dependence; psychotic disorder; bipolar disorder; umbilical hernia; and arthritis in his hands, wrists and shoulders. (Tr. 15). The ALJ concluded that Mr. McGougan's impairments, including his substance use disorders, render him unable to work. (Tr. 15). However, the ALJ further concluded that if Mr. McGougan stopped substance use, he would continue to have severe impairments, but would retain the residual functional capacity ("RFC") to

> perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is limited to occasional climbing of ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling. He can never climb ladders, ropes and scaffolds; and can frequently perform bilateral overhead reaching, handling and fingering. He must avoid concentrated exposure to extreme heat and cold; excess vibration; hazardous machinery; and unprotected heights. In addition, he is limited to simple, routine and repetitive tasks in a low stress environment with no strict production quotas; and is limited to occasional, superficial interaction with the public, co-workers, and supervisors.

(Tr. 17-18). After considering testimony from a vocational expert ("VE"), the ALJ determined that Mr. McGougan could perform his past relevant work as a bakery indexer, and that he was not therefore disabled. (Tr. 20).

Mr. McGougan disagrees. He asserts several arguments in support of his appeal: (1) that the ALJ should have concluded that he met Listing 12.03 even in the absence of substance use; (2) that the ALJ assigned inadequate weight to the opinion of his treating physician; (3) that the ALJ did not properly assess his past relevant work; and (4) that the ALJ failed to consider his impairments in combination. Each argument lacks merit.

Mr. McGougan's first argument is that he should have been deemed to meet Listing

12.03 (schizophrenic, paranoid and other psychotic disorders). Pl. Mot. 27-30. The ALJ found that he met the criteria of that Listing, but that if he stopped substance abuse, he would no longer meet the criteria. (Tr. 15-16). In support of that position, the ALJ cited to evidence from the medical records and to Mr. McGougan's own testimony about his activities and capabilities during his period of sobriety. (Tr. 16-17) The ALJ provided concrete examples of Mr. McGougan's activities to support his conclusion that, absent substance use, Mr. McGougan suffered only mild restriction in activities of daily living, no more than moderate difficulties in social functioning and concentration, persistence and pace, and no episodes of decompensation. *Id.* For example, the ALJ noted that, when sober, Mr. McGougan does household chores, performs personal care, attends social events such as picnics and barbeques, reads newspapers and novels, exhibits no deficits in memory, attention, or concentration, and has no inpatient care or emergency treatment for mental health issues. *Id.* That evidence constitutes substantial evidence to support the conclusion that, absent substance use, the Listing was not met. Mr. McGougan cites evidence demonstrating that he continued to experience mental illness after his sobriety.[2] Pl. Mot. 29. However, continued mental illness does not equal the criteria of the Listing. The ALJ acknowledged that Mr. McGougan continued to experience mental health issues in finding him to suffer from severe mental impairments and in including mental health-related limitations in his RFC. (Tr. 15, 17-18).

In conjunction with his Listing argument, Mr. McGougan also challenged the ALJ's characterization of the medical evidence from Spring Grove Hospital and from the consultative examiner, Dr. Hirsch. Pl. Mot. 27-28. The ALJ summarized the records from Spring Grove by noting that, in a January 2010 competency evaluation, Mr. McGougan was found to have a

---

[2] In fact, Mr. McGougan relies exclusively on Dr. Mee's January and December 2011 opinions, finding marked restrictions in cognitive functioning, and repeated episodes of decompensation. As discussed below, the ALJ properly discounted Dr. Mee's opinions as they are unsupported and contradicted by his own examination notes.

3

restricted affect, and to be irritable, argumentative, and possibly responding to internal stimuli. (Tr. 18-19, 300). He was admitted for in-patient psychiatric care. (Tr. 300). Less than a month later, on February 17, 2010, Mr. McGougan was found competent to stand trial. (Tr. 296). Upon release, with at least one month of sobriety, Mr. McGougan denied any suicidal or homicidal ideation, or any auditory or visual hallucinations. (Tr. 296). The ALJ did, in fact, misstate the date on which Mr. McGougan was found competent to stand trial, but explicitly considered the severe symptoms related to his mental health observed upon intake. Mr. McGougan also takes issue with the ALJ's interpretation of his GAF score of 45, assessed upon release. Pl. Mot. 28. GAF scores are not determinative of disability.[3] *See, e.g., Davis v. Astrue*, Case No. JKS–09–2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010) (noting that the SSA has specified that the GAF scale does not correlate to severity requirements in the mental disorders listings). With respect to Dr. Hirsch's consultative evaluation, the ALJ noted its deficiencies, including its internal inconsistencies and its failure to address the effect of Mr. McGougan's substance use. (Tr. 19). The ALJ also summarized Dr. Hirsch's somewhat inconsistent conclusions, including his assignment of a GAF score of 50 and his simultaneous findings that Mr. McGougan can perform complex tasks. *Id.* Overall, the ALJ adequately demonstrated a consideration of the records from both Spring Grove and Dr. Hirsch.

Next, Mr. McGougan argues that the ALJ erred by assigning too little weight to the opinions of his treating psychiatrist, Dr. Matthew Mee. Pl. Mot. 30-32. Initially, it is worth

---

[3] The difficulty with assigning significant weight to GAF scores is the fact that those scores can be lowered by factors other than the pure severity of a claimant's mental impairments. For example, a claimant's physical health impacts his GAF score. Physical health, however, is properly considered by the ALJ using evidence from the medical sources who are treating the physical issues. A claimant with less significant mental health conditions who reports serious physical ailments to the evaluating mental health provider will have a lower GAF score. Moreover, GAF scores also incorporate difficulties with occupational and financial functioning. Inherently, an applicant for Social Security disability benefits has an unstable occupational situation, and his GAF score will be lowered accordingly. For example, the GAF scores assigned to Mr. McGougan during his hospitalization at Spring Grove, which occurred for the purpose of considering his competency to stand trial for a criminal offense, would be lowered as a result of that personal circumstance.

noting that Mr. McGougan's file contains substantial evidence that could be marshaled to support or to undermine a finding of disability. This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig v. Chater,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F.Supp.2d 601, 608 (W.D.N.C. 2001)). As the ALJ noted, Dr. Mee's own treatment notes indicated significantly higher levels of functioning than indicated in his Medical Assessment reports. *Compare* (Tr. 406-07, 413, 415) (demonstrating relatively moderate symptoms) *with* (Tr. 394-99) (Medical Assessment Reports suggesting an inability to work). The ALJ appropriately considered that discrepancy between the treatment notes and Dr. Mee's opinions. *See Forsyth v. Astrue*, No. CBD-09-2776, 2011 WL 691581, at *4 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with his own medical records); *Cramer v. Astrue*, No. 9:10–1872–SB–BM, 2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the Plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes"); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Moreover, as the ALJ noted, Dr. Mee himself assigned widely discrepant GAF

scores to Mr. McGougan at different points in time. (Tr. 19). The ALJ, in fact, assigned "substantial weight" to one of the GAF scores assigned by Dr. Mee. *Id.* In light of the substantial evidence undermining the allegations in Dr. Mee's opinion forms, and the fact that this Court is not to reweigh the evidence considered by the ALJ, remand is unwarranted.

Mr. McGougan further contends that the ALJ conducted an insufficient inquiry into the physical demands of his past relevant work. Pl. Mot. 32-34. In support of that argument, Mr. McGougan cites a work history report in which he described his job of "bakery indexer" to require him to lift more than 100 pounds at a time. (Tr. 220). Likely in response to that work history report, at the hearing, the VE originally classified the past relevant work as a "mixer of dough," at a heavy exertional level with an SVP of 5. (Tr. 63). However, during the VE testimony, Mr. McGougan's representative asked that Mr. McGougan be permitted to testify to clarify his precise job duties. (Tr. 66). Mr. McGougan testified that he did not do any mixing, and that he simply removed bad dough from the production line. *Id.* He also testified that, before he was transferred to the production line, he did mechanical work at the bakery trying to fix the machines. (Tr. 66-67). In response to those descriptions, the VE testified that Mr. McGougan's job as "bakery indexer" fit within the description of a bakery worker who did packaging and packing, which would be at the medium level of exertion, SVP 2; or a bakery worker on an assembly line at the light level of exertion, again SVP 2. (Tr. 67). The VE therefore opined that Mr. McGougan was capable of performing his past relevant work. (Tr. 67). Mr. McGougan's attorney had the opportunity to question the VE, and did not offer any facts to suggest that the VE's understanding of or classification of the position was inaccurate. (Tr. 68-69). The claimant bears the burden to establish that he cannot perform his past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). Because the ALJ credited the VE's testimony, which was based on the substantial evidence derived from Mr. McGougan's own

6

testimony at the hearing, Mr. McGougan has failed to meet that burden.

Finally, Mr. McGougan submits that the ALJ failed to consider his physical and mental impairments in combination. Pl. Mot. 29-30, 34-35. In support of that argument, Mr. McGougan alleges that the ALJ "did not even have an RFC assessment addressing Mr. McGougan's physical limitations." Pl. Mot. 34. In fact, however, the ALJ expressly considered the evidence relating to Mr. McGougan's physical impairments in his RFC analysis, (Tr. 19), and imposed RFC restrictions relating to Mr. McGougan's physical condition, including postural limitations, environmental limitations, and a restriction to frequent (as opposed to constant) overhead reaching, handling, and fingering. (Tr. 17). In light of the ALJ's opinion, there is no basis on which to conclude that the ALJ inadequately discharged his duty to consider all of Mr. McGougan's impairments in combination.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 18); and

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 14) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated: January 23, 2014                          /s/
                                                 Stephanie A. Gallagher
                                                 United States Magistrate Judge